IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


ALBERT E. CUNEO, individually and      )
t/a A.E. CUNEO II FREELANCE            )
APPRAISAL SERVICES,                    )
             Plaintiff,              )
                                         )
               v.                    )      Civil Action No. 05-1725
                                         )      Judge Joy Flowers Conti
SETTLEMENT CAPITAL                     )      Magistrate Judge Lisa Pupo Lenihan
CORPORATION                            )
             Defendant.              )


## REPORT AND RECOMMENDATION


### I.  RECOMMENDATION

It is respectfully recommended that the Defendant's Motion for Summary Judgment be granted and that Plaintiff's Motion for Summary Judgment be denied.


### II.  REPORT

This is an action brought by *pro se* Plaintiff Albert E. Cuneo ("Cuneo") against Defendant Settlement Capital Corporation ("SCC") for alleged tortious conduct relating to its Court-approved purchase of structured settlement payment rights from Jody Frank Benninger

("Benninger") beginning in 2001.[1]  Since the filing of this action,[2] and since the filing of the

instant Motions for Summary Judgment, the Bankruptcy Court has issued an Order and

Memorandum Opinion.  See In re: Benninger, W.D. Pa. Bankr. No. 05-31181-JAD (Order of

December 18, 2006 and Memorandum Opinion Sustaining Omnibus Objection to All Proofs of

Claim Filed by Albert E. Cuneo and Granting Motion to Release Funds) (the "Bankruptcy

Opinion").[3]

      Judge Deller's thorough and articulate Opinion has disallowed any claims by Cuneo

against Benninger and concluded both that (a) Cuneo's alleged contractual relationship with

Benninger was void as against Pennsylvania law and public policy; and (b) even if it were not

void, the alleged contract created no exclusive relationship as to the brokering/sale of her

structured settlement payments and could transfer no enforceable interest in said payments to

Cuneo.

      Because Cuneo cannot maintain an action against SCC turning on its interference with or

other tortious conduct as to contract rights/property interests which the Bankruptcy Court has

held void and otherwise non-existent on several well-reasoned grounds, Defendant's Motion for

Summary Judgment should be granted.

---

1.  Plaintiff accuses Defendant of, *e.g.*, breaching duties owed to Plaintiff in "contracting for the transfer and assignment of Benninger's annuity payment benefits" and in collecting/failing to pay Plaintiff  amounts owed to him by Benninger.  See Plaintiff's Concise Statement of Material Facts.  See also Complaint (alleging conversion, trespass, and interference with business and contractual relationships).

2.  This action was filed by the Plaintiff in the Court of Common Pleas of Butler and removed to this Court by the Defendant on December 15, 2005.

3.  Plaintiff's Motions for Reconsideration (titled as Motions to Amend) were filed, and duly denied by Judge Deller on January 30, 2007.

A. **Statement of Facts and Procedural History; Bankruptcy Court Opinion**

The history of Cuneo's relationship with Benninger is largely set forth in the Bankruptcy Opinion's Findings of Fact.  In abbreviated form:

In 1979, Benninger's son, Jason, was born prematurely with brain damage, cerebral palsy and other mental and physical disabilities.  He required significant personal care/assistance from the time of his hospital release (approximately one year later) until his death at age 18.[4]  A medical malpractice action was filed and a structured settlement established for Jason's benefit in 1986. Two annuities provided (a) annual income over a period of thirty (30) years and (b) deferred lump sum payments every five years in scheduled amounts (hereinafter collectively the "Malpractice Annuities").  Both annuities were purchased from First Colony Life Insurance Group ("First Colony").

Following her son's death and her divorce that same year, Benninger experienced both emotional and financial distress.  She received a notice of foreclosure on her home and, seeking to sell her home to avoid a sheriff's sale, contacted Northwood Realty.  It was in this way that she came into contact with Cuneo, who was then a real estate agent for that company.  At the same time, Benninger became aware, through a television advertisement, of a company in the business of purchasing structured settlements - Peachtree Settlement Funding ("Peachtree") - and contacted that entity and completed paperwork to apply for purchase of the Malpractice Annuities.

---

4.  Benninger had two other children, a high school diploma, and no outside employment.  She was divorced in the year of her son's death - 1998.

At some time after Benninger commenced discussions with Peachtree, Cuneo became aware of her beneficiary rights to receive the annuity payments, and her desire to liquidate them.[5] Cuneo then drafted a July 14, 2000 "Agreement" for "Consultation Services" (the "Agreement").[6] The Agreement provided, in essence, that Cuneo would provide professional debt/investment and other expertise/services and be paid $150 per hour.  It further purported to entitle Cuneo to a seven (7%) percent commission on proceeds Benninger might receive as a result of "consultations, projections, or financial information disseminated" by Cuneo.  It purported to provide Cuneo a security interest in the Malpractice Annuities, called for Benninger to execute notes to Cuneo, and permitted Cuneo to confess judgment against Benninger.

Cuneo then began billing Benninger for services related to, *e.g.*, the pending mortgage foreclosure, delinquent loans, and eviction of an individual residing on Benninger's property.[7]  At about this time, Peachtree learned that Pennsylvania law requires that sales (or other transfers of interests in) of structured settlements be approved by its Court of Common Pleas.  Peachtree therefore advised Benninger that it was not interested in proceeding with purchase of the Malpractice Annuities, but Peachtree referred Benninger to Defendant SCC.  In August 2000, Cuneo typed and mailed Benninger's written application to SCC.[8]  From August through October

---

5. See Bankruptcy Opinion at 6 ("[I]t is undisputed in this case that Benninger had initiated contact with Peachtree on her own without the assistance of Cuneo and that Cuneo interjected himself into the process after-the-fact.").

6. See id. at 6-7 (describing the Agreement as "difficult for a [lawyer] to decipher", "chocked full of legalese" and "not written in plain English").

7. See id. at 8.  Benninger's house was ultimately subject to Sheriff's sale.  Id. at 10.

8. See id. at 8-9.

2000 Cuneo obtained several judgment notes executed by Benninger for alleged services rendered, Cuneo confessed judgment on these notes in Butler County, hired Virginia counsel to garnish the First Colony annuity payments, and ultimately received in excess of $23,000.[9] Communication between Cuneo and Benninger ceased in early 2001.[10]

In April 2001 and again in April 2003, Benninger and SCC submitted joint petitions for approval to transfer certain of her rights under the Malpractice Annuities, which petitions were approved by the Court of Common Pleas of Butler County.  Cuneo was not involved in the preparation, submission or approval of the petitions.[11]  Benninger's financial difficulties continued and she filed her Chapter 13 petition in August, 2005.  Because Cuneo's garnishments had effectively tied up all remaining funds payable from First Colony to Benninger, she filed a Motion to Release the funds held as well as future payments due to be paid to her and filed, thereafter, Objections to Cuneo's proof of claims.[12]

Following an evidentiary hearing and additional briefs by the parties, the Bankruptcy Court disallowed Cuneo's claims against Benninger *in toto*.  In so holding, the Bankruptcy Court determined that there were many, many irregularities in Cuneo's course of conduct with

---

9.  See id. at 9-10 (noting that "the Court [was] without any evidence upon which it [could] conclude that the garnishments were valid").  According to proofs of claim filed by Cuneo in the bankruptcy case, Cuneo obtained several additional subsequent confessed judgments against Benninger in large amounts.  The Bankruptcy Court again notes the absence of any evidence of substantive basis for the alleged judgments.  See id. at 10.

10.  See id.

11.  See id. at 11-12.

12.  See id. at 12.

Benninger;[13] that the judgments confessed by Cuneo against Benninger were unlawful;[14] that he

was unentitled to equitable relief before the Court;[15] that his execution on Benninger's

Malpractice Annuity payments to satisfy his judgments by confession was in violation of

Pennsylvania's Structured Settlement Protection Act, 40 P.S. § 4001 *et seq.* (the "SSP Act");[16]

that to the extent the Agreement purported to convey to Cuneo a security interest in the

Malpractice Annuities, said Agreement violated the SSP Act;[17] and that, putting it more

succinctly, "Cuneo's efforts to obtain an interest in the annuities were unlawful."[18]

      The Bankruptcy Opinion goes on to conclude that "the Agreement between Cuneo and

Benninger is void under Pennsylvania law" proscribing the unauthorized practice of law.[19]  And

---

13.  See, *e.g.*, id. at 15 n. 17; 21 (noting that a "substantial amount of [Cuneo's] charges for 'services' . . . [were] meritless" and "bogus")

14.  See id. at 14-15 (explaining that the law requires a knowing and voluntary waiver of due process rights); 16 (explaining that Pennsylvania does not allow confessions of judgment for the type of transactions/services alleged by Cuneo).

15.  See id. at 18 (citing to cases regarding Court's unwillingness to lend its aid to those who act immorally, illegally, with unclean hands, and/or in a manner that "shock[s] the moral sensibilities of the judge").

16.  See id. at 19 (noting that the Act is designed to protect the beneficiaries of such settlements from being taken advantage of by others and therefore requires Court approval of a transfer).

17.  See id. at 19-20 & n. 19 (noting also that the language of the Agreement is unclear and that it fatally fails to adequately identify the alleged collateral).

18.  Id. at 20.

19.  Id. at 27 (noting that such unauthorized practice is a misdemeanor, and that an illegal contract will not be enforced); id. ("Because the unauthorized practice of law as illegal as violative of a Pennsylvania statute and public policy, this Court concludes that the Agreement between Cuneo and Benning is void . . . ."). See also id. at 22, 26 (observing that Cuneo is a licensed real estate appraiser, but that his "conduct, behavior and manner of providing services to Benninger constituted the unauthorized practice of law"); id. at 28 ("[A]s set forth above, the

(continued...)

it concludes that even if the Agreement were not entirely void, and even if the SSP Act did not

disallow (for failure to comply with statutory requirements) any purported transfer of interest in

the Malpractice Annuities to Cuneo, Cuneo's claims for entitlement to a commission with respect

to Benninger's sale of interests in the annuities to SCC would *still* be disallowed because (1)

Cuneo did not procure the transaction with either Peachtree or SCC as required for entitlement to

a commission under Pennsylvania law; (2) Cuneo's "only involvement . . . with the [SCC]

transaction was in the physical preparation of the application, which was nothing but a clerical

endeavor";[20] and (3) "any broker arrangement between Cuneo and Benninger was not an

exclusive one", *i.e.*, Benninger was free to sell the annuities on her own or with the assistance of

other brokers (all subject to the SSP Act).[21]

### B.  Standard on Summary Judgment; Collateral Estoppel

Summary judgment may be granted where the plaintiff cannot establish any of his claims

as a matter of law.  It is improper where there is a genuine dispute of material fact, *i.e.*, fact that

could affect the outcome of the litigation.  Summary judgment is to be granted where, upon the

---

19. (...continued)
Agreement is void.").  See generally 22-26 (detailing legal nature of Cuneo's alleged services); id.
at 25 (indicating the Court's skepticism at to whether any of Cuneo's activities benefitted
Benninger).

20.  Id. at 29.

21.  See id. at 30 (also noting that the contract was "convoluted . . ., not written in plain English,
and . . . [to be] construe[d] . . . against the drafter").

    Reiterating its assessment of the Cuneo-Benninger transactions, the Bankruptcy Court writes
that "Benninger . . . had no legally cognizable obligations whatsoever to Cuneo.  Alternatively
any debts payable by Benninger to Cuneo were unlawful as being violative of the [SSP] Act and
Pennsylvania's proscription against the unauthorized practice of law."  Id. at 31.

record, a reasonable jury could not return a verdict in favor of the non-moving party.  <u>See</u>

<u>generally</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); Fed. R. Civ. P. 56.

     As a general rule, the doctrine of collateral estoppel, also known as issue preclusion,

precludes a party from relitigating issues of fact or law that have been fully and fairly litigated

and determined, as essential to the judgment, in a prior case.  <u>See</u>, <i>e.g.</i>, <u>Electro-Miniatures Corp.</u>

<u>v. Wendon Co., Inc.</u>, 889 F.2d 41, 44 (3d Cir. 1989).  <u>See also</u> <u>Parklane Hosiery Co., Inc. v.</u>

<u>Shore</u>, 439 U.S. 322 (1979) (holding that defensive collateral estoppel precludes relitigation of

issues litigated and necessary to outcome of prior action and that mutuality doctrine, under which

both parties had to be bound by prior judgment, no longer applied); <u>id.</u> (explaining that the whole

premise of collateral estoppel is that once an issue has been resolved in a prior proceeding there

is no further factfinding function to be performed).

    **C.**  <u>**Analysis**</u>

     Cuneo's claims <i>sub judice</i> are based on purported rights and/or property interests under

his Agreement/contractual relationship with Benninger.  The Bankruptcy Court has necessarily

determined that Agreement to be void as violative of Pennsylvania law and public policy, and

Cuneo's purported interests in the Malpractice Annuities to be nugatory.  <u>See</u> <i>supra</i>.

     Cuneo is therefore barred by the doctrine of collateral estoppel/issue preclusion from

attempting to relitigate the legality/enforceability of that Agreement or any purported interest in

the annuities.  <u>See</u> Defendant's Supplemental Brief in Support of its Summary Judgment at 6, n.

3; <u>Slawek v. Guiliano</u>, 1994 WL 551523, *5 (E.D. Pa. Oct. 6, 1994) ("An adjudication by the

Bankruptcy Court is entitled to the same verity as other judgments or decrees of courts of

competent jurisdiction and it cannot be collaterally attacked as to matters as were necessarily

decided therein") (citations omitted); <u>Karn v. Frye</u>, 2006 WL 1699461, *4 (W.D. Pa. June 20, 2006) (holding plaintiff collaterally estopped from relitigating issues determined by Colorado bankruptcy court and Tenth Circuit); <u>In re Graham</u>, 973 F.2d 1089 (3d Cir. 1992) ("It is settled law that issue preclusion [applies] to bankruptcy proceedings."); <u>Bd. of Trustees of Trucking Employees v. Centra</u>, 983 F.2d 498 (3d Cir. 1992) (concluding that issue preclusion barred plaintiff from relitigating issues on which Bankruptcy Court's Order made findings).

Cuneo cannot therefore sustain any derivative claim against SSC for its transactions with respect to Benninger's annuities. <u>See generally</u> Defendant's Supplemental Brief in Support of its [Motion for] Summary Judgment (and cases cited therein).[22]

The Report notes that it would, independent of the Bankruptcy Court's Opinion, reach the same conclusions as to the invalidity of both (a) the purported contract between Benninger and Cuneo and (b) any attempted encumbrance or transfer of structured settlement payment interests/the Malpractice Annuities without Court approval, in violation of the Structured Settlement Protection Act, 40 P.S. § 4001 *et seq.* Were the contract enforceable, rather than void as against Pennsylvania law and public policy, the Report would also reach the same conclusion as to its non-exclusivity with respect to the brokering of Benninnger's structured settlement payments. The Report shares Judge Dellar's conclusions as to the absence of any legally

---

22. The Report notes that Cuneo's lengthy and repetitive *pro se* filings in this case, when comprehensible, reflect extensive misunderstandings of fundamental aspects of the law - procedural and substantive, state and federal. <u>See</u>, *e.g.*, Plaintiff's Response to Defendant's Supplemental Brief in Support of Summary Judgment.

congizable obligations from Benninger to Cuneo and his frank assessment of Plaintiff's

conduct.[23]

In concluding, the Report observes the Bankruptcy Court's summation of the transactions

underlying this case:

> It appears to the Court that at the time Benninger met Cuneo, Benninger was in a
> state of emotional as well as financial turmoil.  She had lost her severely disabled
> son . . . .  Benninger was grief stricken and vulnerable.  As this Court views it,
> upon learning of Benninger's circumstances, Cuneo devised a mechanism by
> which to profit from her [misfortune].  In so doing, Cuneo took advantage of
> Benninger's vulnerabilities, lack of sophistication and education.  In Cuneo's own
> words, it was a 'comprehensive scheme' . . . .

The Report further observes that Cuneo reports having obtained certification as a

paralegal.  Should he elect to participate in legal work in that lawful capacity, the Report suggests

that he undertake review of the applicable rules and guidelines governing ethical conduct.


## III.  <u>CONCLUSION</u>

For the reasons aforesaid, it is recommended that the Defendant's Motion for Summary

Judgment be granted and that the Plaintiff's be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C.  § 636(b)(1)(B) and (C), and

Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days

from the date of service to file objections to this report and recommendation.  Any party

---

23.  The Report also notes the merit of Defendant's statute of limitations defense, <u>see</u> Defendant's
Response to Plaintiff's Motion for Summary Judgment (noting that Cuneo learned of the
Benninger-SSC transaction in 2001 but did not file the instant action until 2005), as well as other
defenses raised in its Memorandum of Law in Support of its Motion for Summary Judgment.

opposing the objections shall have ten (10) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.


 /s/ Lisa Pupo Lenihan_____
LISA PUPO LENIHAN
United States Magistrate Judge


Dated: July 27, 2007

cc:  All Counsel of Record